

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-78,955-01

### EX PARTE DANNY LEE HOLLOWAY, II, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 18662 IN THE 6TH DISTRICT COURT
### FROM LAMAR COUNTY

*Per curiam*.

## O P I N I O N

Pursuant to the provisions of Article 11.07 of the Texas Code of Criminal Procedure, the clerk of the trial court transmitted to this Court this application for a writ of habeas corpus. *Ex parte Young*, 418 S.W.2d 824, 826 (Tex. Crim. App. 1967). Applicant was charged with murder but convicted by a jury of the lesser included offense of manslaughter. He was sentenced to twenty years' imprisonment. The Sixth Court of Appeals affirmed his conviction. *Holloway v. State*, No. 06-02-00216-CR, 2013 WL 22491053 (Tex. App. – Texarkana, Nov. 5, 2003, *pet. ref'd*).

In 2006, Applicant moved for post-conviction DNA testing under Chapter 64 of the Texas Code of Criminal Procedure. In 2009, the trial court granted the motion and ordered the DNA testing requested by Applicant. The subject of the testing was a knife that was found in Applicant's

car after the offense. Several witnesses testified at Applicant's trial that the knife looked like the knife wielded by Applicant during the fight that led to the death of the victim, Ashley Lee. Although the knife had tested presumptively positive for blood, no DNA testing had been performed on the knife at the time of Applicant's trial.

The results of the DNA testing performed on two stains from the knife indicated that Ashley Lee was excluded as a possible source of, or contributor to, the DNA profile obtained from the knife. A hearing was conducted on the post-conviction DNA testing results, at which Applicant argued that he was entitled to a new trial because the State had referred to the knife as the weapon used by Applicant and relied on the knife to prove the affirmative deadly-weapon allegation.

On December 3, 2012, Applicant filed this application for writ of habeas corpus in the trial court. This Court received the application on January 14, 2013. Applicant originally raised five grounds for review in his application, including prosecutorial misconduct in failing to disclose exculpatory evidence to the defense, ineffective assistance of trial counsel, and actual innocence. On February 13, 2013, this Court remanded the matter to the trial court to obtain findings and affidavits addressing Applicant's claims.

On April 10, 2013, the trial court conducted a habeas hearing, at which Applicant indicated that he intended to pursue only the actual-innocence claim. After the habeas hearing, the trial court entered findings of fact and conclusions of law, recommending that relief be granted on the basis of actual innocence.

However, this Court has reviewed the transcripts of the trial, the post-conviction DNA hearing and the habeas hearing, and concludes that the trial court's findings of fact, conclusions of law, and recommendation to grant relief are not supported by the record.

An applicant for habeas relief based on a claim of actual innocence must demonstrate that the newly discovered evidence, if true, creates a doubt as to the correctness of the verdict sufficient to undermine confidence in the verdict and that it is probable that the verdict would be different on retrial. *Ex parte Elizondo*, 947 S.W.2d 202, 206 (Tex. Crim. App. 1996). In the context of a free-standing claim of actual innocence, an applicant can establish that it is "probable" that the verdict would be different on retrial only if he can "show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence." *Id.,* at 209. In this case, the trial court finds that the exclusion of the victim, Ashley Lee, as a possible source of, or contributor to, the DNA profile found on the knife taken from Applicant's car proves that the knife was not the murder weapon. The trial court finds that there is a reasonable probability that the knife was the piece of tangible evidence relied upon by the jury to convict Applicant, and concludes that there is a reasonable probability that no reasonable juror would have convicted Applicant had the DNA evidence been available at trial.

The evidence presented at trial in this case included testimony from several witnesses who were present during the fight at a Paris, Texas nightclub that led to the death of Ashley Lee, a bystander to the fight. The State presented testimony from at least six witnesses who saw Applicant with a knife or saw Applicant stab someone during the melee. Two of the State's witnesses, Courtney Gray and Mike Lipscomb, were themselves stabbed by Applicant during the fight, and two other witnesses testified that they saw Applicant stab Ashley Lee while he was wildly swinging the knife around in the crowd.

The defense presented testimony from Applicant's common-law wife, whose hand was cut with a serrated knife when she was trying to extricate Applicant from the fight. She testified that she

did not see anyone with a knife at the scene, and that Applicant did not own a knife like the one that had been taken from his car while they were at the hospital getting her hand treated. The defense presented testimony from three other witnesses who testified that they did not see anyone with a knife on the night of the offense, one witness who saw Applicant with a small pocket knife, not the large survival knife taken from Applicant's car, and one witness who testified that another patron of the nightclub had a knife resembling the recovered knife earlier in the evening.

The knife recovered from Applicant's car was tested for fingerprints, and the knife and a rag in which it was wrapped were tested for the presence of blood. No fingerprints were found, and the rag tested negative for blood. However, the two stains on the knife tested presumptively positive for blood. No additional evidence regarding the source of the blood or DNA was presented at trial.

The State now argues that the trial prosecutor never represented to the jury that the knife found in Applicant's car was the knife used by Applicant to stab Ashley Lee. However, the State's witnesses testified that the knife used by Applicant looked like the knife recovered from Applicant's car, and a police officer testified that the knife recovered from Applicant's car qualified as a deadly weapon, in support of the affirmative deadly-weapon allegation. Clearly, the implication at trial was that the knife recovered from Applicant's car was the knife he used to stab three people during the fight.

However, the absence of Ashley Lee's DNA from the stains on the knife is not clearly exculpatory, as argued by Applicant. The testimony at trial indicated that Applicant stabbed at least two other people during the fight and suggested that he may also have cut his wife's hand while she was trying to extricate him from the fight. The absence of fingerprints on the knife was explained at trial by the possibility that the knife had been wiped off prior to its discovery. Such cleaning could

also have removed some or all of Ashley Lee's DNA from the knife.

Furthermore, even if, as Applicant argues, the knife was "the piece of tangible evidence" upon which the jury relied to convict him, there was ample "intangible" evidence that Applicant stabbed several people with *a* knife on the night of the offense, including the testimony of people who saw Applicant stab people, and people who were themselves stabbed.

The results of the Chapter 64 DNA testing in this case do not show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence. Even if evidence had been presented at trial that Ashley Lee's blood was not on the knife discovered in Applicant's car, it is unlikely that such evidence would have overcome the testimony of the witnesses who saw Applicant with a knife, saw Applicant use the knife, or were themselves injured by the knife wielded by Applicant, whether or not it was the same knife found in his car after the offense.

Relief is denied. Copies of this opinion shall be sent to the Texas Department of Criminal Justice-Correctional Institutions Division and Pardons and Paroles Division.


Delivered: October 30, 2013
Publish.